GEORGE DION, *pro ami.*, *vs.* RICHMOND MFG. CO.

PROVIDENCE—MAY 15, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) · *Negligence. Master and Servant. Illegal Contract. Minors.*

In an action by an infant plaintiff against a master for negligence, the defendant will not be permitted to set up its violation of a statute, intended to protect the minor, as a defence to its own negligence in the service rendered by the minor.

TRESPASS ON THE CASE for negligence. Heard on demurrer to declaration, and demurrer overruled.

PER CURIAM. The court is of opinion that this case falls within the principle laid down by this court in *Eagan* v. *Maguire*, 21 R. I. 189 ; *Baldwin* v. *Barney*, 12 R. I. 392 ; and *Blair* v. *Granger*, 24 R. I. 17.

This is not a case to enforce an illegal contract, as was *Birkett* v. *Chatterton*, 13 R. I. 299, but an action to recover for the defendant's negligence, which is a question independent of the violation of the statute.

It would be a startling doctrine to say that a defendant could set up his own violation of a statute, intended to protect children of tender years, as a defence to his own negligence in the service rendered by them.

The demurrer is overruled.

*John W. Hogan*, for plaintiff.

*Walter B. Vincent*, for defendant.

---

JOSEPH MAYOTT *vs.* NORCROSS BROTHERS.

PROVIDENCE—MAY 17, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Master and Servant. Negligence. Assumed Risk.*

Plaintiff was engaged in dividing up into slabs blocks of marble by means of saws. It was not disputed that the slabs were of such size and weight

○

as to require two men to handle them with safety. It appeared that plaintiff had received no instructions to proceed with the work alone on the day in question, although he had been told previously by the foreman to do the best he could about handling the slabs alone :—

*Held*, that, assuming that the plaintiff properly recognized the order of the foreman as a continuing order, as he might, yet, as it appeared that he was fully informed of the character of the work, that he was a man of experience therein and knew that it was unsafe to handle slabs of that size alone, it must be held that he assumed the risk incident to the doing of the work in that way.

(2) *Master and Servant. Emergency.*

An emergency is a condition of things appearing suddenly or unexpectedly; an unforeseen occurrence ; an event or combination of circumstances which calls for immediate action without giving time for the deliberate exercise of judgment or discretion :—

*Held*, that, as plaintiff was doing the work in the ordinary manner, so far as one man was capable of doing it, and had the opportunity for the exercise of deliberation and judgment, and there was nothing to distract or divert his attention, there was nothing to show that he was acting in an emergency.

(3) *Duty of Master to furnish Sufficient Number of Workmen. Contributory Negligence.*

*Held*, further, that, conceding defendant's negligence in not furnishing assistance to handle the slabs, yet, as there was no exigency or threat of discharge, or anything calling for the assumption of unusual risk on the part of the plaintiff, no legal cause of action was shown.

TRESPASS ON THE CASE for negligence. Heard on petition of defendant for new trial, and judgment for defendant.

TILLINGHAST, J. This is trespass on the case for negligence. The facts are substantially as follows :

(1)    The defendants, in carrying on their business, which is that of contractors and builders, were accustomed to divide up into slabs blocks of marble, by means of saws. To facilitate this work and to provide for the convenient handling of the slabs, after being sawed, the blocks were placed upon a movable platform or car running on rails. In this manner they were brought in contact with the saws, and while being sawed remained upon the car. After the sawing was completed the car, with the slabs thereon, was moved to some other locality, where they could be conveniently unloaded, or transferred to other cars. In unloading them they were first

sufficiently separated, by the aid of a bar, to permit a sling to pass around them. The slabs did not rest directly upon the platform of the car, but upon certain timbers or joists attached thereto, so that there would be a space underneath them for the passage of the sling. The sling was an endless rope, which was put around one slab at a time, and one loop passed through the other and hooked onto the derrick chain. When this operation was completed the slab was readily hoisted by means of the derrick, and swung into its desired position.

Upon the day of the accident the plaintiff had been, during the forenoon, assisting in unloading some slabs from one of the platform cars in the manner above described. He had been working with the foreman, Mr. Doyle, and the two had together handled several of the slabs. At the noon hour two slabs remained on the car, and both men went to dinner.

When the plaintiff returned to work at one o'clock, Mr. Doyle was not there to assist him, and, after waiting about fifteen minutes for him to come, and not seeing him nor hearing anything from him, the plaintiff attempted to do the work alone ; and while endeavoring to unload the slabs one of them fell upon him and broke his leg.

The plaintiff alleges in his declaration : "That on account of the large size and weight of the said slabs of marble, two men were required to lift them and place them on the gangs with safety, and that it was dangerous for one man to do the work alone ; that on the 18th day of January, 1900, the plaintiff was engaged in loading, with the assistance of a derrick, one of the gangs, and on account of the short number of hands had no one to assist him ; that ordinarily he had assistance in loading said gangs ; that on said day the work had to be done hurriedly and the foreman had assured him that he would send another man to assist him as soon as he could and to do the best he could alone ; that he continued to do the work and was assisted from time to time by other employees of the defendant ; and he avers that on said date, while he was engaged in hurriedly unloading said gangs alone, and momentarily expecting assistance from other em-

ployees, and while steadying a heavy slab of marble with one hand and trying to put a sling around it before raising it to the derrick and while in the exercise of due care, and, from the hurry, not realizing the danger, said slab tipped over and fell upon his leg . . . and that said defendants . . . were negligent and careless in not providing the plaintiff with said assistance, they well knowing that the work had to be done in a hurry and that he had not the time or opportunity to inform himself or realize the danger to which he was exposed in attempting to load said gangs alone."

At the trial of the case in the Common Pleas Division, the plaintiff recovered a verdict in the sum of $3,700; and the case is now before us on the defendants' petition for a new trial, on the grounds (1) that the verdict was against the law and the evidence; (2) that the testimony does not show any negligence on the part of defendants; (3) that it appears that the plaintiff, voluntarily and without necessity, assumed the risk of his employment, which he fully understood and appreciated; and (4) that the plaintiff was guilty of contributory negligence.

The allegations contained in the plaintiff's declaration may be summarized as follows:

First. That said slabs, from their size and weight, were unsafe for one man to handle; second, that on the day of the accident the defendants were short of men and the plaintiff was compelled to handle the slabs alone, and was directed so to do by the foreman, and that in the performance of the work he was obliged to act hurriedly; and, third, that the assistance which had been promised him by the defendants was not furnished.

As to the first point, there is no dispute that the particular slabs which the plaintiff was attempting to move when he was injured were of such size and weight as to require two men to handle them with safety.

As to the second point, while there is evidence that the defendants were short of men, yet there is no evidence that the plaintiff was compelled to handle these slabs alone, or that he was directed so to do. He testifies that he was work-

ing alone when he got injured ; that it was about two o'clock in the afternoon ; that the foreman was helping him all the morning ; that after dinner he waited a little while for some one to help him, but as no one came, and as they were in a hurry for the car to be loaded, he commenced to do the work alone.    It appears, however, that after the time when the plaintiff quit work for dinner, and before the time of the happening of the accident, he had had no conversation with Mr. Doyle, the foreman, and had received no instructions from him to proceed with the work alone at the expiration of the noon hour.    Indeed, the plaintiff does not claim that any one asked him or directed him to proceed with the work alone after dinner.    His testimony is simply that he was expecting some one would come to help him, and that after waiting a few minutes he proceeded to do the work alone, although he knew it was dangerous for one man to do it.

It is true that the plaintiff testifies to certain directions given him by the foreman, Mr. Doyle, about handling the slabs alone and doing the best he could, etc., but that testimony relates to some other day and some other slabs, which slabs, for aught that appears in the record, were not dangerous for one man to handle.    Indeed, the plaintiff testifies that some of the slabs could be safely handled by one man, and he also testifies that, during the two years that he had worked for the defendants, he had had assistance in the handling of the slabs only for a part of the time ; that ordinarily he worked alone for two days or more in a week.

Even assuming, therefore, that the plaintiff properly recognized the order previously given by the foreman about handling the slabs alone, doing the best he could in such case, etc., as a continuing order, as we think he might, yet, as it clearly appears that he was fully informed as to the character of the work, that he was a man of experience and judgment therein and knew that it was unsafe for him to attempt to handle slabs of this size alone, it must be held, under the well-settled rule which has been repeatedly recognized and acted upon by this court, as well as by nearly every court of

last resort in this country, that he assumed the risk incident
to the doing of the work in that way.

*Gaffney* v. *Railroad Co.*, 15 R. I. 456, at p. 458 ; *Larich* v.
*Moies*, 18 R. I. 513 ; *Pintorelli* v. *Horton & Hemenway*, 22
R. I. 374 ; *Benson* v. *Railway Co.*, 23 R. I. 147, at pp. 159–
60 ; *Baumler* v. *Brewing Co.*, 23 R. I. at p. 434.

(2)        As to that part of the allegation in the plaintiff's declara-
tion that on the day of the accident the work *had to be done*
hurriedly, we find no evidence upon which the jury could
properly have found that it was supported.   Or, at any rate,
to state it differently, there is no evidence from which the
jury could have found that the plaintiff was acting in an
emergency when he was injured.   And it was only in view
of the fact that said allegation in the plaintiff's declaration
was " compatible with the statement of an emergency " that
we overruled the demurrer to the declaration when the case
was previously before us.

An emergency is a condition of things appearing suddenly
or unexpectedly ; that is, it is an unforeseen occurrence.   As
related to the law of negligence, it may properly be defined
as any event or combination of circumstances which calls for
immediate action without giving time for the deliberate exer-
cise of judgment or discretion ; in short, an *exigency.*

No such condition of things existed, however, in connection
with the doing of the work in question by the plaintiff.   He
was at work alone ; no person was near him ; so far as ap-
pears, there was no defect in the appliances which he was
using, nothing broke or gave way ; the work was being done
in the ordinary manner ; in so far, at any rate, as one man
was capable of doing it in that manner, the plaintiff had the
opportunity for the exercise of deliberation and judgment, and
there was nothing whatever to distract or divert his atten-
tion.   In view of these facts and of the further fact, to which
we have already referred, that the plaintiff was perfectly
familiar with the doing of such work and admits that he
knew it was dangerous for him to do it alone, we fail to see
that he has any legal ground of complaint against the de-
fendants in the premises.   It is true he testifies that the work

was to be done hurriedly, or that the defendants had told him that they were in a hurry for the slabs, and that the men were waiting for him; yet he nowhere testifies that he was attempting to do the work hurriedly, but simply that, in view of the fact that they were in a hurry for the stone, he attempted to go on with the work before anyone arrived to assist him therein.

But, even assuming that the plaintiff was in fact acting hurriedly, there is even then nothing to show that this was the cause of his injury. On the contrary, that was caused solely, according to the plaintiff's own testimony, as we understand it, by reason of the fact that he was attempting to do, unaided and alone, work which he well knew could not safely be attempted or done by one man.

It is true the plaintiff testifies that he did not think the stone he was handling would fall. Of course he did not. No one in the exercise of his senses would attempt to move a heavy stone if he expected it would fall upon him. But the plaintiff did know that he was endangering his own safety by attempting to remove the stone alone; and, knowing this, he must be held, under the circumstances aforesaid, to have voluntarily assumed the risk incident thereto.

(3)    As to the third point in the summary of plaintiff's declaration aforesaid, namely, that the assistance which had been promised the plaintiff was not furnished, it may be said in the first place that it does not appear that any assistance had been promised in connection with the handling of the particular slabs which caused the plaintiff's injury. All that does appear is that during the forenoon of the day of the accident the plaintiff had been assisted in handling similar slabs, and that he expected, and we think he had the right to expect, similar assistance in the afternoon, as these slabs were too large for one man to handle, which fact was known to and had been acted upon by Doyle, the foreman or boss. And we do not wish to be understood as deciding that the defendants were free from fault in failing to furnish such assistance. But what we do decide is that the plaintiff was not called upon, nor was he under any necessity to do the work

alone. He should have waited until assistance arrived. There was no exigency, there was no threat of discharge, there was nothing which called for the assumption of unusual risk on the part of the plaintiff ; and therefore, even conceding the defendants' negligence in the premises, no legal cause of action is shown.

But plaintiff's counsel argues that mere knowledge of the danger on the part of plaintiff is not a defence ; that knowledge is only a part of negligence, and it is still a question whether there was negligence or not. In support of these propositions he cites *Brooke* v. *Ramsden*, 63 L. T. Rep. 287 ; *Graham* v. *Ry. Co.*, 38 W. Va. 277 ; *McMahon* v. *Iron Ore Co.*, 24 Hun. 48, and several other cases.

These cases undoubtedly sustain the general position thus taken, and we see no reason to doubt their correctness. It does not necessarily follow that the mere knowledge by the workman that a risk will be run by him in doing his work is enough to deprive him of the right to recover if he is injured in performing it. There must also be an intelligent comprehension on his part of the risk and the danger, and a voluntary undertaking by him of that risk and danger. Thus, in *Hawley* v. *Ry. Co.*, 24 Sup. Ct. N. Y. 115, after a careful review of cases, it was held that knowledge of defects by the plaintiff was not enough to justify a court in granting a nonsuit. So in *Hough* v. *Ry. Co.*, 100 U. S. 213, cited by plaintiff, it was held that the knowledge of the plaintiff was not, under the circumstances, as a matter of law, absolutely conclusive of want of due care. To the same effect are *Mehan* v. *Ry. Co.*, 73 N. Y. 585 ; *Coombs* v. *Cordage Co.*, 102 Mass. 596 ; *Stafford* v. *Ry. Co.*, 94 Me. 178 ; *Honlahan* v. *File Co.*, 17 R. I. 141 ; and numerous other cases which might be cited. But in all of these cases the doctrine that where it clearly appears that the servant knows and intelligently appreciates the risks incident to his employment he must be held to have assumed the same either expressly or impliedly appears.

Plaintiff's counsel has cited numerous cases in which he contends it has been decided that, where the declaration counts

upon an insufficient number of men to do the work, verdicts found in favor of the plaintiffs therein have been sustained, even though the danger was apparent.   We will examine a few of these cases, to see if they sustain this position.

*Mason* v. *Machine Works*, 28 Fed. Rep. 228, was a case where a foreman left a laborer to hold alone, on edge, the bed plate of an engine, ordering away those who were assisting him ; and the bed plate fell down upon him and injured him, without his fault, and the defendant was held liable.

The case shows that the plaintiff and six other laborers, by direction of the foreman, took a bed plate of an engine, nine or ten feet long, about three and a half feet wide, and three inches thick, and weighing about 1,500 pounds, set it on edge and rolled it under a hoisting apparatus for the purpose of raising it to put a truck under it.   While they were holding it in that position the foreman called away six of the men, and left the plaintiff to hold it alone.   It turned over onto the plaintiff and broke his legs and otherwise injured him. The testimony showed that at least four men were necessary to hold the bed plate, and that after the men were called away it got the advantage of the plaintiff so that he could not escape, and that he called for help but no one came, and it fell upon him without his fault.

The court found that the men left in obedience to the foreman's command ; that the plaintiff had the right to expect that an adequate number of men would be provided for the safe handling of such a body, and that he had the right to expect that their assistance would be continued until it could be safely dispensed with ; that it was taken away by authority from the defendant when it could not be done without danger to him, and when he had no choice by which he could protect himself.

It is clear that, under the circumstances thus appearing, the plaintiff did not assume the risk of injury.

*Swift & Co.* v. *Rutkowski*, 182 Ill. 18, was a case where the failure of the defendant to employ a sufficient number of workmen was the proximate cause of the plaintiff's injury. It also appeared that the plaintiff, being a mere boy, did not

appreciate or understand the danger to which he was exposed, and also that he objected to doing the work alone and was promised assistance therein.

That case, therefore, is also clearly distinguishable from the one before us.

*Supple* v. *Agnew*, 191 Ill. 439, was a case where the court held that it is the duty of the master to his servant to exercise reasonable care in furnishing an adequate number of colaborers to assist in the performance of work of a hazardous nature, and that whether such duty was performed was a question of fact for the jury. The material facts in that case were that the plaintiff was temporarily taken away from his regular employment and put to work in another and separate department of the master's business, where he was injured. And the court said, in view of these facts, that : "The servant's implied assumption of risks, which accompanies and is a part of the contract of hiring, is confined to the particular work and ·class of work for which he is employed ; and if the master orders him to work temporarily in another department of the general business, where the work is of such a different nature and· character that it cannot be said to be within the scope of the employment, and where he is associated with a different class of employees, he will not, by obeying such orders, necessarily thereby assume the risks incident to the work ;" citing in support thereof, amongst numerous other cases, *Mann* v. *Oriental Print Works*, 11 R. I. 152.

*Cheeney* v. *Steamship Co.*, 92 Ga. 726, was a case where, relying upon the express promise of the foreman that he would station a man to attend the hatchway of the vessel, from which bales of cotton were to be unloaded, plaintiff went into the hold of the vessel and entered upon his work. He had just positively refused thus to go into the hold unless the foreman would station the hatch-tender in his proper place, as aforesaid. The foreman failed to comply with his promise, and the plaintiff went into the hold supposing that the foreman had complied with his promise, and was injured by reason of such failure. The court held that in such circum-

stances the plaintiff did not assume the risks of his employment.

*Penn. Co.* v. *McCaffrey*, 139 Ind. 430, was a case in which the court held the familiar doctrine that "if one acts naturally in case of sudden and instant peril put on him by another and is injured, he is not guilty of negligence, although afterwards, out of the presence of danger, with time to reflect, and in the light of all the known facts, it may appear that another course of conduct might have led to safety." In short, the case is clearly one in which an emergency existed, and hence comes within the exception to the general rule of assumed risks.

*Young* v. *Ry. Co.*, 166 N. Y. 227, was a case where the engineer did not know what the practice was in operating the switch which caused the injury, and that the signals were so concealed by obstructions near the track that it could not be ascertained in the night whether the switch was open or closed until he was so near that the train could not be stopped until it ran onto the side track and collided with the freight cars, thus causing the accident in which he lost his life. And hence it was held that deceased did not assume the risk of any accident resulting from a default on the part of the defendant to employ a sufficient number of servants to operate the railroad with safety.

In *Johnson* v. *Water Co.*, 71 Wis. 553, it was held that when the failure to employ a sufficient number of men to perform a particular work in a reasonably safe manner is the proximate cause of an injury to a servant engaged in such work, the master is liable unless the servant may fairly be said to have assumed the risk incident to carrying on the work with an insufficient number of men. That case was before the court on demurrer, and the court held that the facts alleged in the complaint negatived any presumption that the plaintiff was aware of the fact that there was a want of sufficient men to perform the work safely which he was suddenly called upon to assist in doing, and hence that it could not be said that the plaintiff assumed the danger incident to carrying on the work.

*Northern Pacific Ry. Co.* v. *Babcock*, 154 U. S. 190, was a case where an engineer in the employ of the defendant was suddenly called upon at midnight, during a severe snow-storm, to take charge of an engine in moving a passenger train. He had been off duty on account of illness for a number of days next preceding the time in question. When he last used the engine he discovered that the "pilot plow" was out of order and in a dangerous condition. The purpose of such a plow is to push the snow from the track; and if not properly braced it is likely to rise up and ride over the drift instead of going through it, and the natural result would be to throw the engine from the track. After discovering that the plow was defective, he called the attention of the foreman of the shop and the master mechanic to its condition. At the time he was called upon to take charge of the engine, on the night of the accident, the round-house was so full of steam that the engine could not have been critically examined by him. In passing through a cut the engine capsized, and the engineer was killed. The court held that, under the circumstances, the instruction which was requested at the trial by the defendant to the effect that the deceased assumed the risk of the defect in the engine, was rightly refused. There was proof in the case which tended to show that notification by the engineer to the master mechanic of the existence of the defect was given ten or twelve days before the accident, and that at the time there was an impression created in his mind that it was to be remedied, and the court held that : "As the employee had given notice of the defect to the proper officer whose duty it was to make the repairs, and the impression had been conveyed to him that these would be made, he had a right to assume that they had been made and to act upon that assumption. The mere fact of his taking the engine out at midnight under the circumstances did not of itself, unsupported by other proof, imply an assumption by him of the risk resulting from the dangerous and defective condition of the attachment to the engine." The verdict was, therefore, sustained.

These cases are quite sufficient to illustrate the character

of those relied on by plaintiff's counsel, and it requires no argument to show that they signally fail to sustain the broad claim above made regarding them.

Finally, as it is clear that the plaintiff has no cause of action, the verdict must be set aside and the case remitted to the Common Pleas Division, with direction to enter judgment for the defendants for their costs.

*James M. Gillrain,* for plaintiff.

*Walter B. Vincent,* for defendants.