## SEABOARD AIR-LINE RAILWAY *v.* McMICHAEL.

1. Where a freight-train conductor of a railroad company, engaged in the handling and transportation of articles of interstate commerce, is compelled, under the operation of the 16-hour law, to take a side-track, where his train is tied up until taken in charge by a conductor of another train, the two trains being there consolidated, and the conductor first referred to, under the terms of his employment by the company, has the right to travel deadhead on the consolidated train to the point of his destination, from which it is his duty to bring out another train as conductor to the initial point; and where, at a station between the point at which the first-mentioned train is tied up and its destination, the conductor thereof, at the request of the active conductor in charge of the consolidated train, undertakes to perform the work of a brakeman in coupling and uncoupling cars, which is necessary for the handling and switching of them, the conductor thus undertaking to do the work of a brakeman being in the pay of the company at the time of rendering such services, he is not a mere volunteer; and if the work which he is attempting to do subserves the interest of the employer company, and he is injured while in the performance of such work through the negligence of the company's other employees, he can maintain a suit for damages against the company under the provisions of the Federal employers' liability act of 1908.
2. There being no evidence in this case to show that in attempting to uncouple the cars for the purpose of switching there was any emergency existing, the court erred in instructing the jury upon that subject and its effect upon the plaintiff's case.
3. Both the plaintiff and the defendant introduced in evidence certain rules of the company. There was no question that the company had made and formulated rules. That being true, the court should not have submitted to the jury, as a question for them to decide, whether or not the company had made rules for the guidance and control of its employees.
4. A charge to the jury, "that those rules, so long as they are reasonable and lawful, are binding upon the employees of the company" does not necessarily import that the reasonableness of the rules is left to the jury for determination. If counsel for the movant had desired the court to pass explicitly upon the question whether the rules were reasonable or not, they should have so requested.
5. A complaint that the jury found contrary to a certain part of the court's charge amounts merely to the complaint that the verdict is contrary to law, and raises no other question for determination by this court than that raised in the general ground that the verdict is contrary to law and contrary to the evidence.

　　　　　　　　　　　JULY 10, 1915.

Action for damages.　　Before Judge George.　　Crisp superior court.　　January 27, 1914.

W. B. McMichael brought suit against Seaboard Air-Line Railway, for personal injuries which he alleged he sustained in conse-

44

quence of the negligence of the defendant's agents and employees. It was alleged in the petition, that the plaintiff was the conductor of a freight-train engaged in the handling of interstate shipments of freight between Atlanta, Georgia, and Birmingham, Alabama. On the 11th day of October, 1912, he left Atlanta for Birmingham in charge of a designated train, known as train No. 706; and when he reached Coal City, Alabama, a station on the line of the defendant's railway between Atlanta and Birmingham, his train took a side-track, where it remained tied up under the operation of the 16-hour law, and there awaited the arrival of another freight-train, known as train No. 709, in charge of one S. I. Bigham as conductor. Upon the arrival of train 709 at Coal City about five hours later, the two trains were consolidated, and this consolidated train proceeded with both engines attached in front; the engine of train 706, the dead train, being in the rear of the engine of train 709. With the train thus made up they proceeded to Alton, Alabama, another station on the defendant's line of railway. At Alton it became necessary to do certain switching. The flagman of train 709 was sent back to guard the rear of the train. Bigham was crippled and unable to efficiently discharge the duties of conductor and look after the coupling and uncoupling of cars. At the order and request of Bigham, and because of that conductor's physical condition, and because it was plaintiff's duty to do so in order that defendant's property might be protected and its interests subserved, plaintiff undertook to uncouple cars, made necessary by having to leave some of the cars out of the train at Alton. After two switches had been made, and while plaintiff was between two of the cars, and while his presence there was known, or should have been known, to conductor Bigham and the engineers and firemen of both engines which were attached to the train, and without any signal being given by plaintiff (which signal should have been awaited by each and all of said train crew), and without any signal from any one having authority to give a signal, the cars were violently shoved back by the two engines; and the plaintiff, who was standing on the dead-blocks between the two cars, in order to save himself from the impending danger brought about by the improper and negligent backing of the cars tried to throw himself from the track, but his left foot was caught and mangled by the wheels of the train.

The defendant filed its answer denying the material allegations,

including all charges of negligence contained in the petition. On the trial the jury returned a verdict for the plaintiff. A motion for a new trial was overruled, and the defendant excepted.

*Whipple & McKenzie* and *E. A. Hawkins,* for plaintiff in error.

*F. G. Boatright* and *J. E. Hall,* contra.

BECK, J. (After stating the foregoing facts.)

1. Error is assigned upon the following charge of the court to the jury: "I charge you that if you believe it to be the truth of this case that on this particular occasion this plaintiff was engaged by the conductor and was employed by the conductor to assist in cutting out and in switching cars at Alton, Alabama, and if you believe it to be the truth of this case that this plaintiff did, in response to that request, or that demand, or that command made upon him, actually engage in the work of cutting out, and switching out, and bleeding the air on those cars, performing the duties ordinarily required of a brakeman; if you believe that to be the truth of this case, and if you believe that in so doing it was necessary, on account of a certain emergency which the plaintiff contends was then and there existing, for him so to do; if you believe that to be the truth of this case, and if you further find it to be the truth of the case that in so doing he was subserving the interest of the master and promoting the work of the master, then I charge you that the plaintiff would not necessarily be a volunteer, and you would be authorized under those circumstances to find that the plaintiff was not a volunteer within the meaning of the law defining such. Now, as to whether any emergency existed for a conductor to call any other employee to his assistance in cutting out and switching the cars at Alton, Alabama, or as to whether or not he did call any other employee, or engage any other employee, or whether or not he did call on or engage the plaintiff, upon those questions, disputed issues of fact, nothing that I have said, or may say, is to be considered by you as any intimation whatever as to what is the truth of any issue of fact." It is insisted that this charge was erroneous, because the conductor actively in charge of the train had no authority to employ the plaintiff to assist in switching cars, and if the plaintiff assisted in switching cars under said employment he was a volunteer; and because there was no evidence whatever of the existence of an emergency at the time the plaintiff undertook to do the work of a brakeman in coupling and

uncoupling the cars, as the defendant had provided men and means for switching cars, and it was not for the plaintiff to say that he was serving the interests of the company in performing that work.

Those portions of the Federal employers' liability act of 1908, under the provisions of which this suit is brought and the defendant sought to be held liable to the plaintiff for the injuries received, are as follows: "Sec. 1. That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or .any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment.  .   .    Sec. 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this Act, to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

Under the provisions of this act, and the testimony of the plaintiff relative to the circumstances under which he undertook to do the work in which he was engaged at the time he received the injuries complained of, we do not think that he could be called a mere volunteer. If he was a mere volunteer, he was not entitled

to recover at all. The act is designed to afford remedies to employees who are injured in the service of the employer whose liability for injuries received in service is asserted. That McMichael was the employee of the defendant company at the time of receiving his injuries can scarcely be questioned. He was a freight-train conductor in active charge of the train running from Atlanta, Georgia, to Birmingham, Alabama, until he reached Coal City, where he was tied up by the operation of the 16-hour law, and where, under instructions, he took a side-track with his train and awaited the arrival of a following freight-train, upon which he was to travel deadhead to Birmingham, from which last-mentioned place it would then become his duty to bring out another train on his trip to Atlanta. But while it is true that he could travel deadhead (for the 16-hour law prevented his continuance in charge of a moving train) and receive, though traveling deadhead, his mileage as a conductor, he was still an employee of the railroad and the defendant company was his employer. He could have ridden and remained in the caboose during the remainder of the journey to Birmingham, and while riding inactive in the caboose he might in some respects have occupied a position, relatively to the company and its liabilities, similar to that of a passenger on a passenger-train; but he did not, by leaving the caboose and by not standing upon his rights to travel in the caboose as a passenger, lose entirely his character of employee. If he saw fit, upon request of the conductor, to perform services for the company which were useful and necessary at the time under all the circumstances, he should not be treated as a mere volunteer, or as a stranger who had been employed for the occasion by the conductor. The conductor would not have had the right to engage a mere stranger who was not in the employment of the defendant company. The employer has the right to say who shall be one of its employees; has a right to consider the character, intelligence, and other qualifications of a man before he is permitted to enter upon his service. But this plaintiff had been taken into the employment of the company, and it was a question for the jury to say whether or not he was injured while in the service of the company, doing proper work for it under the circumstances, and whether he received injuries in consequence of the negligence of the defendant company or its employees. As to who are employees entitled to the protection of

the statute under which this action is brought, see Thornton's Federal Employers' Liability and Safety Appliance Acts, § 35 et seq., and the authorities cited. See also Dougherty's Liability of Railroads to Interstate Employees, § 18, and authorities cited. Whether conductor Bigham was physically able to perform the duties incumbent upon him in the position which he held with the company was, under all the evidence, a question for the jury; and if he was suffering from physical disabilities, that fact could be considered in connection with the question whether or not, at the time he received his injuries, the plaintiff was performing labor and service in the interest of the defendant company.

2. There is, however, one portion of this charge which we do not think was authorized by the evidence in the case; and that is the portion which submits to the jury the question as to whether there was an emergency, and as to whether or not the plaintiff attempted to perform the services undertaken by him in an emergency, and further instructs the jury as to the effect of this fact upon the case and the plaintiff's right to recover if they should find that an emergency existed. We do not think that there is any evidence to authorize the charge upon the subject of emergency. Relatively to whether or not there was an emergency, the plaintiff, after testify- ing that in compliance with the 16-hour law his train was ordered to be consolidated with conductor Bigham's train at Coal City and proceed from that point with Bigham and his crew in charge, fur- ther testified, as to the circumstances at the time he went between the cars where he received his injuries: "We went on over to Alton, the first place there was any switching to be done, and Mr. Bigham asked me to help him do the switching, as these cars had been in my train, and I knew exactly where they stood, and his flagman had gone back, and he had nobody but a negro brakeman to help him; and so me and my flagman and his negro brakeman were switching the cars. I was doing the cutting of the cars in switching, and my flagman and his brakeman were riding them, one the main line, and one the side-track; we were kicking them into the brick-yard track. Alton is right on the top of a hill, it is down-hill in this brick-yard and it is down-hill on the main line, and the cars had to be rode on both tracks; and the switching that was made I cut the cars and gave the signal; there were no signals made except from me and Mr. Bigham; he took

the signals from me, was standing about fifteen or twenty feet from the railroad. We had kicked two into the brick-yard track, and one I think back to the main line, and had kicked two more on the brick-yard track, and then shoved down to cut off some on the main line, and his brakeman was cutting them on the main line; we had one more car to put in the brick-yard, and I went to go into the brick-yard, and they had dead-blocks on these two cars; and in order to cut this air I had to get on these dead-blocks on my knees, and I was reaching over to get the angle-cock, and just as I reached over the engine gave a push back and caused me to either have to go out on my head or throw myself backwards, and I threw myself back that way [indicating], trying to throw myself from between the cars, and my left foot was caught under the wheel and was mashed all to pieces."

This evidence might show that the departure of the train from Alton on its way to Birmingham could be expedited so as to enable the train to arrive more nearly on time if the plaintiff would give the assistance which he testified was requested of him; but there is nothing in this testimony to show that such a state or combination of circumstances existed as to amount to an emergency. The word "emergency" is thus defined in the Century Dictionary: "A sudden or unexpected happening; an unforeseen occurrence or condition; specifically, a perplexing contingency or complication of circumstances. . . A sudden or unexpected occasion for action; exigency; pressing necessity." This definition is quoted in the case of United States v. Sheridan-Kirk Contract Co., 149 Fed. 809, 814. And in the case of Mallon v. Board of Water Com'rs, 144 Mo. App. 104 (128 S. W. 764), we find the following definition: "The word 'emergency' signifies some sudden or unexpected necessity, requiring immediate or at least quick action." And the following in the case of Mayott v. Norcross, 24 R. I. 187 (52 Atl. 894): "An 'emergency' is a condition of things appearing suddenly or unexpectedly; that is, it is an unforeseen occurrence. As related to the law of negligence, it may properly be defined as any event or combination of circumstances which call for immediate action without giving time for the deliberate exercise of judgment or discretion, in short, an exigency." Other similar definitions will be found under the head of "Emergency" in 3 Words & Phrases, 2361, and 2 Words & Phrases (2d Series), 255, 256.

3-5.   Headnotes 3, 4, and 5 require no elaboration.   As the case is sent back for another trial, no opinion is expressed as to the sufficiency of the evidence. .

*Judgment reversed.  All the Justices concur.*